The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Thank you. The seated, please. I'm going to call the roll. First case this morning is number 06-1282, Osram GMBH v. International Trade Commission. Mr. Smith. Good morning, Your Honor. May it please the Court, I'm Alex Smith, representing Osram. I've saved three minutes for a bottle of wine. There are three reasons, Your Honors, why proper claim construction in this case is an average by number. First, the patent claims. The claim construction has to be determined in the context of the invention. And the claim range in question here is designed to tell a person of ordinary skill whether or not the LED will function properly. And only an average by number will tell a person of ordinary skill whether or not the claim will function properly. We have given an example in our applied group, which I think is after Poe. In the patent, a preferred embodiment is having particles of one to two microns. Is there any expert testimony supporting that? Yes, Your Honor, there is expert testimony supporting that. Describe the example that you gave. There were many examples described at trial, particularly when we did the— Not the example in your group. The example in our group, no, Your Honor. The testimony at trial was that, from Dr. Strauss, was that a couple of thousand particles is the amount of particles that are in a working LED. So we've taken the preferred embodiment, one of the preferred embodiments of one to two microns, and said if you have a couple of thousand, two thousand one-micron particles, clearly within the range in the patent, clearly within the dependent claim that says one to two microns,  there was testimony that having one-micron particles would produce a well-functioning LED. An average by number would produce one. An average by volume would produce one. If you drop one 20-micron particle into that LED, which is certainly permitted by the claim, because the claim has an upper limit of 20 microns, the average by number would change to 1.01, indicating the LED can still work well. And that's consistent with the testimony at trial. The problem is, of course, that it says mean, not average. That's right, Your Honor. The commission construed mean to be average. And we're agreeing with that. We're not contesting that. It was a dispute of the commission about whether mean would be a median or an average. And we've agreed, for purposes of this appeal, it would be average. The question now is do you do the average by number or by volume? Do you divide by the number of particles, or do you divide by the volume of particles? Volume is a cube of the diameter. So as a result, it's diameter times diameter times diameter. So a 20-micron particle to the cube is 8,000, whereas a 1-micron particle is 1. So by doing an average by volume, we weight the volume particles 8,000 times more important than the 1-micron particle. And the testimony at trial was they will not have that kind of effect. In fact, they'll have a minor effect, if at all, on the operation of the LED, because the testimony from Dr. Zakow was a 20-micron particle is going to sediment and fall to the bottom. In the pilot... You agree, do you not, that measurement by volume is a possible alternative? The measurement by volume is something that some people do, but it would not be the measurement... The measurement by volume stuff is sold by volume measurement, right? That's right, Your Honor. But that is not what's determined here. People sell it by volume, and Dr. Zakow testified that volume is a quality control measurement. Those were his words, quality control. When you design the powder, you do a measurement by number. And then when it comes time to sell it, you can't count particle by particle, and you're doing tons of this. So you need a relatively easy, inexpensive measuring equipment to be able to determine the size. And that equipment is by volume, and so it gets sold by volume. Well, I'm not sure that the measurement method has anything to do with this, does it? I mean, you can use an SEM measurement, which is the more refined measurement, and it will give you a diameter which can be used to make a volume calculation, right? That's exactly right, Your Honor. And the testimony by Dr. Zakow and Dr. Strauss were persons in the field designing LEDs. They said that when they design LEDs, they use the SEM measurement. Right, but you could use the SEM measurement to do a volume calculation just as well as a number calculation, right? The first calculation is by number. What an SEM is is a scanning electron microscope. I understand, but isn't my statement correct that you can, if you're using an SEM measurement that gives you diameter, and that can be used either to make a volume calculation or a number calculation, either one, right? Your Honor, I think the distinction that's important is the first measurement, the first calculation that comes. That's the answer to my question. Isn't it true that you can use that measurement, that SEM measurement, which gives you diameter, to make either a volume or a number calculation? Yes, Your Honor. The first measurement does by number. The second measurement is by volume because you're measuring each particle. So you have a total number of diameters, and you know how many particles you counted.  To get to by volume, you have to start determining the density and the weight of the material, and so that's a conversion from by number. Even dominance expert Dr. Holloway, who said he uses SEM measurements, agreed that an SEM measurement is a by number measurement. Sure, it can be converted to by number. Just like a by volume measurement can be converted to by number. All these conversions and sales have little to do with the context of the invention. The invention has to somehow account for the distribution in this slurry epoxy, right? That's right, Your Honor. And isn't that going to be computed best by number? That's exactly right, Your Honor. What you're trying to do is making sure you've got an adequate distribution throughout this entire epoxy, whatever you call this, so that when the blue laser hits the phosphor, it transforms into yellow, and you get the white effect. That's exactly right. And so in the context of the invention, what you're worried about is the number. Actually, the distribution, but the number is going to give you the best reading of that, right? That's exactly right, Your Honor. Is volume going to give you a reading of the distribution? No, it won't. Actually, it skews it, doesn't it?  If we're looking for the context of the invention, which is what we should be looking at, how it's sold or even how it's put in, we're looking for what makes the invention work. We're worried about distribution, right? That's right, Your Honor. The most important evidence is the patent. Now, what in the record shows us that somebody thought through the problem just that simple way? We're worried about distribution, number equates to distribution. Your Honor, the patent itself provides an embodiment of 1 to 2 microns. In the example in our reply, we've showed how if you have an LED with 1 to 2 micron distribution of particles, you'd have a functioning LED. The claim permits a 20 micron bulb to be dropped in. But I think Judge Rader is asking whether there's any testimony by anyone. No testimony or record. What in the record shows us that distribution is the key? And with distribution being the key, you will necessarily focus on number because volume misaligns distribution. Your Honor, the testimony from all of the experts until the eve of trial was that a person of ordinary skill would understand an average... Okay, give us three or four quick sites there, all the experts. We know the Holloway site, 84064, where he talks about total number of grains. Give us some of the others. You should have it right there in your notes, shouldn't you? Yes, Your Honor, I should. What I have in my notes is the statement of the IPC Commission decision that says, and this is at 8486, indeed, both Osram's expert and Dominic's expert testify as much that the ordinary way of calculating an average is by number. Okay, that will help. Thank you. But that would include the boulders. Yes, Your Honor, it would include the boulders, but when you do an average by number, a boulder counts as one particle. When you do it by volume, it counts as the cube of the diameter. So as a result, by volume, the boulder weights 8,000 times more than one micron particle. But that's not the effect in the device. Dr. Zakhar testified that these large boulders will eat sediment to the bottom, that when you have multiple layers of sediment, it could be under other particles and won't even see any light in the large interior traps light. So in fact, you have three reasons why the large boulder won't have the same effect, won't have the effect in proportion to its volume. And so the volume measurement overweighs. There is testimony that the ordinary way of doing this is by number, but that has nothing to do with this particular part. Is there any testimony that in this particular part, that because of the context of the patent that Judge Rader was talking about, that this is the way you would do it? I see some conclusory testimony stating that this is the way it should be done, but is there any testimony that relates it to the things that Judge Rader was asking about? Yes, Your Honor. In our opening brief on page 48, we have citations to Dr. Zakhar's testimony. And in there he says, the large particles first, they sediment at the bottom. This is in the long answer on page 48 of our opening brief. It's the fourth line of that answer. The large particles first, they sediment at the bottom. So all these large particles are on the bottom. You have a large, a thick layer of large particles there. You saw it on the S-cam, Dr. Nelson showed. And so the lower ones there, they're just not even hit by the waves. That's saying that when you have particles on top of particles, the ones at the bottom don't even see any light. So they don't contribute. He goes on to say, further down, large particles, if they are very large, the core doesn't even contribute because the light doesn't fully go in. So he finishes by saying, so the small particles do have the most important function here in the device, it's those who want to count, it's not the large ones. So that's the affirmative testimony from Dr. Jack, I'll provide it in three reasons. I don't know why that testimony is connecting that to using the number measurement rather than the volume measurement. You skipped over a sentence in the middle. For example, the powder measurement, they're just counted. That's the number count, it's the powder. That's right. Yes, Your Honor. And so that is testimony. His first answer, towards the top, the number distribution best measures is the most appropriate for this application. So that was his first testimony, saying by number, and then he gave the reasons why, by explaining why large particles don't have the effect of the volume, and then saying the small particles are the ones who want to count. I also want to refer to our opening brief on page 17. And here we have testimony, it's on page 17. Here we have testimony from dominance expert, Dr. Holloway. He said, I believe the term mean grain diameter of D50 refers to an average grain particle diameter where mean is defined by a standard and well-accepted definition. He then goes on to say diameter of the grains of particles times the grain size distribution divided by the sum of the grain size distribution. So that's where he's talking about, their expert talking about distribution of particles is the most important. And so a person of ordinary skill, looking at the patent, would know that you don't use a volume-based measurement because it overweights, it skews the large particles. It gives them too much of an effect on the overall measurement. The example of a working LED with 1 micron particles, you add 120 micron particles, the average volume goes up to 16, over 3 times the upper limit. And yet the device would still work fine because you still have all of the 1 micron particles, you just have one 20 micron bulb that's going to fall to the bottom of the device. A construction by volume renders the upper claim limitation superfluous because it's nearly impossible to have a mean grain diameter of D50 based on a volume and still have a 20 micron particle because of the huge effect that a volume-based measurement has with a 20 micron particle. In addition, your honors, all of the experts up until the eve of trial agreed to the standard definition that somebody would use, in this case, for the context of this patent, is an average by number. And of course, that's consistent with, and it makes sense because that's our everyday understanding of average. I thank the commission for pointing out that that's what we learned in grade school. So people start by understanding averages as based on the number. In this case, in the context of the patent, we shouldn't deviate from that common plain meaning of an average by number. It's the best average for the context of this patent. And I think the Halmetica case is particularly relevant to this case. In that case, there were two possible methods. One was a one-dimensional method. The other was a two-dimensional method. And this court said that the two-dimensional method would be the one selected by a person of ordinary skill because it best indicated whether or not you have a snug fit. And so for this case, the average by number is the best fit. That's what a person of ordinary skill would select because it best indicates whether or not the LED would function. And I see that I'm into my rebuttal time, so I will stop. We will send you rebuttal time, Mr. Smith. Thank you. Thank you, Your Honor. And may I please report, what we're truly interested in in this case is what a person of ordinary skill in the art would understand the term mean grain diameter of 350 into mean. And in this case, the person of ordinary skill in the art would have come to patents with the understanding that in this particular industry... We're not worried about the industry, are we? We're worried about the invention. The invention is key to proper distribution. What best measures distribution in the epoxy? Your Honor, in this particular case, the volume distribution best measures... How can volume measure? The heavy particles are going to sink to the bottom or they're going to be touched by the laser. Well, Your Honor, those particles... That's what the SEM shows. It shows all those big particles at the bottom. Yes, correct. Where they don't get hit by the laser, which is up above it. But those particles are actually detrimental to the function of the invention because they trap light and because they're sediments. And that's something that when you're making the product, when you're making the LEDs, this is something that is a big problem in terms of the manufacturing along the way. Some of these claims are directed not only to the final LED, but they're also directed to methods of making and they're directed to the casting composition. So what the volume method is going to do for you is it's actually just going to shift the distribution to actually smaller particles and they're going to make sure that there are fewer of these large particles, which OSRAM and its experts spend a lot of time explaining why these large particles are so detrimental. And in fact, when the inventors were making this invention, they started with large particles and they moved to smaller particles. And so the concept of the invention and its specification  were to use the number or the volume method. But you're worried about distribution clearly, right? We are concerned about distribution. The best measure of distribution is going to be number, which is supported by experts, both of OSRAM and Dominant, right? That's what your opinion says at page 846 there. Your Honor, the expert testimony is inconsistent with the intrinsic evidence, which indicates that a person who would actually only argue and understand that... Show us in the patent where it says that we should use volumes to measure. That's my point, Your Honor. In fact, the claims themselves and the specification don't indicate whether you would use number or average. They don't talk about wanting small particles and not wanting large particles and large particles not have an effect on the patent. The patent is talking about distribution and having adequate contact with blue laser with phosphor so you get the counterbalancing yellow to get the white. Right, Your Honor, and large particles are going to detract from that because they're going to trap light. And so it doesn't tell you whether you're going to want the volume method or the average by number, which is why the Commission went to the prosecution history and found specification sheets from OSRAM itself. OSRAM is talking out of two sides of its mouth. It's saying we want number, but then it itself does it by volume. But aren't those specification sheets for sales purposes? Those were internal specification sheets for the phosphors that they use in their own LEDs. And so they make their phosphors as well as make LEDs. They do it all in-house, as does the CHIA, another large LED manufacturer, who also reports their particle sizes by volume. And so this shows that the industry, a person with a learning skill in the art who would work in the industry, would understand that when we're talking about distribution of particles in the LED field with phosphors, we're talking about volume. Well, Mr. Smith points to this testimony that he's quoted on page 48 of his brief, and that seems to connect volume measurement to the purposes of the invention. Is there any expert testimony the other way? Your Honor, the commission didn't... The commission relied on intrinsic evidence and didn't feel that... The answer is no. The answer is no. Okay. So how do we... I'm not clear. You know, the trouble with these cases is we get a lot of lawyer argument that that seems to be true on both sides of this case. And, you know, I'm not an expert in phosphors or LEDs or whatever. I have to look at what's in the record. What do I find? If I don't find an expert testimony, what do I find in the patent itself, which tells me that there's a concern with having too many large particles, which would lead you to perhaps use a volume measurement rather than a number measurement? Right. And unfortunately, in this particular patent specification, there is nothing that talks about wanting large particles or not wanting large particles or not wanting small particles. That is in the expert testimony where they do talk about not wanting large particles, and they say how large particles... So there is an expert testimony that says large particles are undesirable. Right. Exactly. And that is from Dr. Zakow, who also goes on to admit that Austrian uses the volume method and that it's common for phosphor manufacturers to report by volume. But that's a bulk product. That's not specific to an LED. That's not the invention, epoxy distribution above the laser that's going to give us the effect we want. But, Your Honor, if you look at the claims, the claims are not all directed to the final LED. Many of them are directed to a casting composition where you would have a large number. It would be made in bulk. This specification indicates that this casting composition would be made in bulk and then added to the LEDs, as well as you have methods of making where you're talking about the powder in general. You're talking about the large powder, and that large powder is going to be able to accommodate these 20 micron particles, which Austrian indicates that if you use the volume method, you would not be able to have 20 micron particles, but in fact you would. Where do I find expert testimony that large particles can actually interfere with the functioning of the invention as opposed to don't contribute to it? Where do I find that testimony? Your Honor, that testimony is from Dr. Zach Gow. And I believe it's at A, 50, 41, or 42. 50, 41, or 42. This is where they talk about how they created the invention and how they went from larger particles of dye to 14 microns. And he talks about how sedimentation is a problem during production and how it will affect the homogeneity of the light. And so large particles are, in fact, going to be detrimental. It's something that a person on the Board of Examiners would understand. And just based on the claims themselves, when they limit the particles to under 20 microns, that suggests that larger particles, that they're not going to want those particles, that there's going to be some harm associated with those particles. And so Ostrand makes the argument that the 20 micron particles would be excluded if you used average by volume. But again, going back to the point that many of the claims are directed to bulk powders where you would be able to accommodate 20 micron particles and still have an average grain diameter of less than 5 microns. Moreover, they assume, with regard to the final LED, where they say you would only have a certain number of particles, that their calculations are based on the assumption that all of the other particles would be one micron, but in fact it could be larger, it could be smaller, you would have a distribution. And so basically using the volume distribution just means that you're going to shift that distribution and it's going to look slightly different than the number distribution, but you're actually going to end up with smaller particles and fewer large particles, and that is going to mean that you're going to have homogeneous light and you're going to have better final LEDs. Not only that, but in response to Ostrand and Nietzsche and phosphor technologies all showing that a person with a skill in the art would use the volume method, Ostrand never came forward with specification sheets of its own showing that, no, in fact here we do use the number method, that this is something that is common in the industry, common in the field with regard to phosphors in LEDs. And so there was no evidence rebutting what was found in the intrinsic evidence with regard to the volume method. And also there were treatises that say that when you're dealing with real powders as opposed to theoretical powders, you would use the weight base, which is equivalent to the volume base, and so that is something also that a person with ordinary skill in the art would be aware of. And with regard to their argument that a final LED can only be measured by SEM and that SEM will be by number, that is in fact not true. When you're in a lab and you have your SEM, you count each particle size by number, but in fact you can change that particle size to volume, and that is, they say, the experts said that that was common practice in order to convert from number to volume, and you would in fact be able to get a number-based average, which again would be common in this particular art. And that is different from the choice of Austrian to actually report its particle size by volume. But the convertibility is standard. Right. But it's very hard to find in the specification anything to suggest that you have to, again, one of my colleagues had asked about this, this is really the major problem, isn't it? It doesn't suggest that these numbers are selected, that the average is selected by volume. Right, but Your Honor, there's also nothing in the specification that would suggest that they are selected by number either. But the volume does skew what we want to find, which is an adequate distribution. As soon as you have a volume calculation, you're no longer guaranteeing distribution at all because those big particles are going to largely affect and skew your calculation by number. But it doesn't skew the calculation. Your Honor, a person worried so many hours would understand what a volume average means, and they would understand what sort of distribution that would show, and they would understand that in order to get under the 5 micron average that you would want fewer particles, it just means that instead of picking this phosphor off of the shelf, you would pick this phosphor off of the shelf, and we would know that this phosphor, which is done by volume, has more small particles and fewer large particles. We would also know that those large particles are detrimental. They might land right on top of the semiconductor chip. So they'd have to perform an additional internal calculation to avoid the skewing of volume. But this patent is geared to what makes the invention work and work best. Isn't that going to be a number calculation in every instance? Because that reflects distribution. That's what we want, distribution. Actually, they would have to do the additional step when they go to the phosphor manufacturer and say, I want a powder that has a grain size of less than 20 microns and an average less than 5 microns. They would have to make that additional calculation. But we're not in a manufacturing process. But I'm not talking necessarily about because it's manufacturing in bulk. I'm talking about the language that a phosphor manufacturer and an LED manufacturer, that they're going to have, that a person of ordinary skill in the art, would say, I want average less than 5. And they would have to make a calculation if you're saying that, in fact, in this art, they use number. And it just wouldn't make sense. And when they went to go have that conversation, that they would be talking in a different language. Let me see if I understand this. As I understand it, the small particles are the only particles that contribute affirmatively to the functioning of the device. The large particles don't contribute to the functioning of the device. The question is whether the large particles take away from the functioning of the device. So if your concern were only with the former, that is, having enough small particles to make the device function, then the number measurement would be the right way to do it. If you were concerned about the adverse effect of the large particles, then the volume measurement might be the right way to do it. That seems to be the difference between the two of them. Yes. And, Your Honor, unfortunately, the specification doesn't tell us which one would be most important. But when we looked to the inventors, they themselves said, we started with large particles, and they had problems. So we moved to the smaller particles. Don't the SEMs show that the large particles are largely out of play? They fall to the bottom of the epoxy and are not in line to absorb any laser beams at all? But, Your Honor, one of the functions of this particular invention is during production, and during production, the sedimentation is a large problem. Because they do sediment, it does take these particles. These are valuable particles. It takes them out of play. It means that the LEDs are going to be more expensive. Plus, they track light. They might be shifted to one side or to the other. So it means that the light that's coming out might not be homogeneous. And it might not be as bright as it otherwise would be if you were to have the smaller particles and not have the larger particles that are in the final LED. And that's why it's important. And that's why a person who is very skilled in the art would want to know and would want to make sure that they are on the smaller side of the scale as opposed to the larger side of the scale. Any questions? Any more questions? Thank you. Mr. Smith. Thank you, Your Honor. So what about the commission says that the large particles are undesirable at least during production. That's why you didn't have a blinding measure that said that you would make sure that you didn't get too many large particles. Your Honor, there is some truth to that. And that's already taken account of in the claim. The claim says you can't have more than 20 microns. So that's an upper bound on how large the particles are. Secondly, you have an average. If you have too many large 20-micron particles, even by number, it's going to drive the average over five. So it already is taken into account. You don't want too many large particles. But there's no problem with having a few. In fact, we saw them on the ICM. They sit on the bottom, and they have very little effect. That was the testimony about the Zaka. So when you balance both, which is you want the distribution of small particles, the only average that accomplishes that purpose is an average by number. Now, I want to get back to some of the testimony in this case. On A4330, Dr. Zaka was asked, what would be the consequence of using particle distributions on a volume basis as opposed to a number basis for purposes of making an LED? This is Dr. Zaka. Dr. Zaka is an Osmer employee who's Osmer's technical expert at trial. And the answer was, if you really say you want to do it on a volume basis, large particles would be heavily overemphasized. And then he goes on to explain the cubing effect. This is on the bottom of the page. I'm sorry, I shouldn't give you the page. It's the page 688, the bottom right-hand corner of A4330, running up to the top of A4331. And he says, what if you compare a 1-micron particle and a 10-micron particle? He says a 10-micron particle would have 1,000 times the effect. So he's referring to the problem with that. Next, I'd like to refer the court to this is actually in our reply brief on page 13. And Dr. Zaka was asked, is the proper way to analyze particle size, in this case by weight, by volume, or by number? Answer, the proper way to analyze it is by number. And the way that anyone of ordinary skill in the art would know to analyze SEM micrographs is to create a distribution by number, just as we have seen it done in this page, just as we saw Dr. Holloway did. That's page 13 of our reply brief. Next, I'd like to turn to page 43 of our opening brief. And at the end of a very long answer, about five lines up from the bottom. So the person of ordinary skill in the art is not the phosphomarketing selling guy. He is the guy who is the R&D guy for the LED development. And he would always look at SEM in a number distribution. This is what he's referring to. These are different things. You know, what's a little troubling for me about that is that all this testimony doesn't refer to any documentary evidence that that's the way the research person would do it. Your Honor, the documentary evidence is the patent and the claim. And the commission has said that they took no guidance from the patent and claim. Hence, they're not taking account of the context of the patent. The context of the patent specifically says, and it's in a dependent claim, and it's recited in the spec, that a preferred volume is 1 to 2 micron particles. So you know you should have a functioning device with 1 to 2 micron particles. The claim allows a 20 micron particle. So if you put a 20 micron particle in with a 1 to 2 micron particle, your volume shoots up above 5, and yet the device would still work. You have thousands of 1 micron particles. The device is working fine. Well, I saw one example last week, but I'm sure there are other examples that could be conjured up where that wouldn't be a problem. But the claim construction should not read out of a preferred volume. It should not read out of dependent claim. Dependent claim, I believe, is for an 861 patent. It specifically says 1 to 2 micron particles. And it depends on claim 1 that has a 20 micron upper limit. So that particular example would be read out by a preferred product. The problem is that, you know, this is a lawyer argument in Greece. You didn't have an expert focus on that problem and testify to it, right? Your Honor, I think we did because Dr. Zakha specifically said that the volume method overemphasizes the log particles for three reasons. But that's not the same thing as focusing on the 20 micron limit, which you didn't have an expert do. Your Honor, we do a number of examples, given a trial, where each side, hypothetically, what we tried to do was a very conservative one that relied on one of the preferred environments in our applied rules because the dispute had crystallized down to the point where the commission said we take no guidance from the patent or the claim. And so we tried to build an example just based on the patent and the claims to show that if you take guidance from the patent and the claims, the proper average that a person of ordinary skill would take would be by number. We already had testimony from Dr. Zakha saying that the volume basis overweights the large particles. They have little to no effect on the device, and a person of ordinary skill would not select a measurement that isn't in the context of the patent. You wouldn't select a measurement that's not going to tell you whether or not you have a well-functioning device. Any more questions here? Thank you, Mr. Speaker.